UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL L. KLOBERDANZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOSEPH M. ARPAIO, SHERIFF OF MARICOPA COUNTY, ARIZONA, in his individual and official capacities and JANE DOE ARPAIO; JOSEPH K. PELLINO and JANE DOE PELLINO; STEVEN H. CARPENTER and JANE DOE CARPENTER; ROBERT W. BURGHART and JANE DOE BURGHART; MARICOPA COUNTY, a political subdivision of the State of Arizona by and through the MARICOPA COUNTY BOARD OF SUPERVISORS and its five board members, Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Mary Rose Wilcox; WILLIAM MONTGOMERY, MARICOPA COUNTY ATTORNEY in his individual and official capacities and JANE DOE MONTGOMERY; JOHN and JANE DOES I though X;<br><br>    Defendants. | 2:13-cv-02182 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 14] |

## I.  MOTION PRESENTED

At docket 3, Maricopa County Sheriff Joseph M. Arpaio and Jane Doe Arpaio ("Sheriff Arpaio"); Deputy Sheriff Joseph Pellino and Jane Doe Pellino ("Pellino"); Deputy Sheriff Steven Carpenter and Jane Doe Carpenter ("Carpenter"); Posseman Robert W. Burghart and Jane Doe Burghart ("Burghart"); Maricopa County ("County"); Maricopa County Board of Supervisors and its five members Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Mary Rose Wilcox ("County Board

Members"); and Maricopa County Attorney William Montgomery ("County Attorney Montgomery") (collectively "Defendants") filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants and Plaintiff Daniel Kloberdanz ("Kloberdanz" or "Plaintiff") then filed a stipulation of dismissal at docket 5, whereby Plaintiff agreed to dismiss County Attorney Montgomery and the County Board Members. Plaintiff also agreed to dismiss all claims for punitive damages against the County. At docket 8, Plaintiff filed his response in opposition to the remaining arguments in Defendants' motion. Defendants' filed a reply at docket 12.

Thereafter, the court granted the stipulation at docket 11, terminating County Attorney Montgomery and the County Board Members and dismissing all claims for punitive damages against the County. The remaining Defendants refiled their motion to dismiss at docket 14 pursuant to an agreement between the parties because the original motion at docket 3 inadvertently cited an unreported case as authority. The parties indicated that because the amended motion only makes one minor change to the original motion, the Plaintiff's response at docket 8 and Defendants' reply at docket 12 adequately addresses all the issues. Oral argument was heard on January 23, 2014.

## II.  BACKGROUND

Based on the allegations in the complaint, Kloberdanz was and is a licensed attorney in the State of Arizona and has been a member in the Berens, Kozub, Kloberdanz & Blonstein, PLC law firm. On the evening of June 15, 2012, an employee of the law firm, Valerie Lingenfelder ("Lingenfelder"), was involved in a traffic accident in Cave Creek, Arizona. She called Kloberdanz and asked him for assistance at the scene of the accident. Kloberdanz arrived before the Maricopa County Sheriff's Office ("MCSO"). When the deputy sheriffs arrived at the scene Kloberdanz indicated to Posseman Burghart that he was Lingenfelder's attorney and had not been a witness to the accident. Deputy Sheriff Pellino then approached Lingenfelder and moved her

away from Kloberdanz. He asked Lingenfelder a few questions and performed an eye test on her. He then placed her under arrest and handcuffed her.

Kloberdanz alleges that Pellino became aggressive after learning that Kloberdanz was present as her attorney. When Kloberdanz asked if he could stand near Lingenfelder to help calm her down, Lingenfelder confirmed Kloberdanz was indeed her attorney, Pellino shoved Kloberdanz hard on his chest, knocking him over. Kloberdanz hit his head on the ground. Kloberdanz stood back up, and Pellino yelled to him about lawyers telling him how to do his job. He then tackled Kloberdanz and told Kloberdanz he was under arrest, all the while yelling anti-lawyer sentiments. Kloberdanz alleges that he did not resist or fight back or do anything to provoke Pellino.

The other two officers on the scene, Deputy Sheriff Carpenter and Posseman Burghart, then assisted Pellino. They tackled Kloberdanz while he was down on the ground, handcuffing him and holding him while Pellino proceeded to drive Kloberdanz's head into the gravel. Kloberdanz was hit and kicked by the three deputies. Pellino lifted up Kloberdanz's head and smashed it forcefully into the ground while yelling at Kloberdanz. The officers finally pulled Kloberdanz off the ground, but with such force that they dislocated his shoulder.

Kloberdanz was escorted to a sheriff vehicle and driven to a substation where he was placed in a jail cell. He was not provided any medical attention while in jail. Pellino spoke to Kloberdanz while he was in jail, again commenting on Kloberdanz's role as a lawyer and telling Kloberdanz that he does not need to be told how to do his job. Pellino told Lingenfelder that the officers were going to teach Kloberdanz a lesson.

Kloberdanz was then transferred to the downtown Phoenix station and not released until the next day. He was formally charged with the crime of "hindering prosecution." He alleges in the complaint that the charges were still pending at the time of filing; however, Defendants note in their motion to dismiss that the charges have since been dismissed.

1  Kloberdanz alleges he had multiple physical injuries resulting from the deputies'
2  assault and that he continues to suffer from post-concussion symptoms, pain and
3  suffering, loss of income and earning capacity, damage to his reputation, emotional
4  distress, and other adverse health effects.

### III. THE COMPLAINT

6  Kloberdanz filed his complaint in Maricopa County Superior Court. Defendants
7  removed the case to federal court on October 25, 2013. The complaint sets forth nine
8  counts.

9  Count One: A claim pursuant to 42 U.S.C. § 1983 against Pellino, Carpenter,
10 and Burghart, as well as MCSO and the County, for use of excessive force in violation
11 of the Fourth Amendment.

12 Count Two: A claim pursuant to § 1983 against MCSO and the County on the
13 theory that MCSO and the County are liable for the constitutional torts committed by the
14 three deputies because the deputies' actions were authorized by custom or policy.

15 Count Three: A claim pursuant to § 1983 against Pellino, Carpenter, Burghart,
16 MCSO, the County, and Sheriff Arpaio[1] for depriving him of the "privileges and
17 immunities guaranteed to all citizens" and subjecting him to "retaliatory conduct, illegal
18 arrest and detention, and [prosecution] without proper cause, with an unconstitutional
19 motive and malice, and without equal protection or due process, and to intimidate,
20 harass, and coerce him for being an attorney, or to otherwise conceal and cover-up the
21 MCSO's wrongful assault." The specific constitutional violation alleged in this count is
22 not entirely clear from the turgid language; Plaintiff references the First, Fourth, Sixth,
23 and Fourteenth Amendments, uses the phrases "due process," "privileges and
24 immunities," "equal protection," and describes his prosecution as unconstitutional and
25 malicious. However, given the title of the count "Violation of 42 U.S.C. 1983 - Equal

---

[1]Plaintiff also brought this Count against County Attorney Montgomery, who has since been dismissed.

Protection" and given that Count Three alleges Plaintiff was treated differently from others similarly situated with no rational basis, the court construes it as an Equal Protection claim.

    Count Four: A claim for assault and battery under Arizona law against Pellino, Carpenter, Burghart, MCSO, and the County.

    Count Five: A claim for negligence against MCSO and the County on the theory that they breached their duty to Kloberdanz by authorizing certain customs, practices, and policies that led to the deputies' torts and by failing to oversee and train the deputies.

    Count Six: A state law clam[2] for false arrest and imprisonment against Pellino, MCSO, and the County.

    Count Seven: A state law claim[3] for abuse of process and malicious prosecution against Pellino, MCSO, and the County.[4]

    Count Eight: A state law claim for slander and defamation and false light invasion of privacy against MCSO and the County.

---

[2] It is unclear whether this count is based on state or federal law given the confusing and repetitive language in paragraph 166 that states the false arrest and imprisonment violated his constitutional rights "including but not limited to those based on 42 U.S.C. § 1983 and other due process rights violated by the MCSO, Deputy Sheriff Pellino, and the County, under various state and federal claims including but not limited to constitutional violations including but not limited to those based on 42 U.S.C. § 1983 and other due process rights." Given that Plaintiff already set forth a § 1983 claim based on the officers' violation of his Fourth Amendment rights and given that the Plaintiff describes this as a state law claim in his response brief (Doc. 8 at p. 16), the court will treat this count as a state law claim.

[3] Again, it is unclear whether this count is based on state or federal law given that paragraph 182 in Count Seven states that the "abuse of process and malicious prosecution violate Kloberdanz's constitutional rights including but not limited to those based on 42 U.S.C. § 1983 and other due process rights." Plaintiff, however, does not indicate in the heading of this count that this is a federal claim, and he describes it as a state law claim in his response brief (Doc. 8 at p.16). Thus, the court will treat it as such.

[4] Plaintiff also brought this Count against County Attorney Montgomery, who has since been dismissed.

Count Nine: A state law claim for intentional and negligent infliction of emotional distress pled against Sheriff Arpaio, Pellino, Carpenter, and Burghart.[5]

In counts one through five and count nine, Plaintiff requests punitive damages from Pellino, Carpenter, Burghart, and Sheriff Arpaio. In counts six through eight, he requests punitive damages only from Pellino and Sheriff Arpaio.

Defendants' amended motion to dismiss sets forth a list of challenges to Plaintiff's complaint. Some of the challenges are now moot given that Plaintiff has agreed to dismiss the Five Board Members, County Attorney Montgomery, and any claims for punitive damages against the County. There are five remaining arguments that the court must address. First, Defendants argue that all claims against MCSO should be dismissed. Second, Defendants argue that the County cannot be liable for the deputies' alleged federal constitutional or state law torts because the County bears no responsibility for law enforcement decisions made by Sheriff Arpaio or his employees. Alternatively, they argue that the County is not liable under § 1983 for the actions of the deputies because Plaintiff failed to allege facts to support his allegation there was a County policy or custom in place that caused the constitutional injury. Third, they argue that Sheriff Arpaio also cannot be held liable for the actions of the deputies under § 1983 because Plaintiff failed to allege facts to support his allegation that Sheriff Arpaio had a policy or custom in place that caused his constitutional injury. Fourth, they argue that Plaintiff's state law claims against Carpenter and Burghart must be dismissed because Plaintiff failed to comply with the notice requirements set forth in A.R.S. § 12-821.01. Fifth, they argue that Plaintiff failed to properly plead his § 1983 claims.

### III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and

---

[5]County Attorney Montgomery was also named in this count.

construed in the light most favorable to the nonmoving party."[6]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[7]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[8]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[9]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[12]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]  "In sum, for a complaint to survive a motion to

---

[6] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[7] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[8] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[9] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] *Id.*

[12] *Id.* (citing *Twombly*, 550 U.S. at 556).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 557).

dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[14]

### IV.  DISCUSSION

**A. Claims against MCSO**

Plaintiff did not name MCSO as a defendant, but his complaint sets forth multiple counts against it. Defendants argue that all claims against MCSO must be dismissed. Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of an entity other than an individual or corporation to sue or be sued is governed by state law. Under Arizona law, a government entity has only those powers given to it by the legislature.[15] Consequently, a government entity does not have the power to sue or be sued unless the legislature has conferred such power by statute.[16] If a government entity is incapable of being sued, it is a nonjural entity.[17] MCSO is a non-jural entity.[18] Indeed, Plaintiff does not argue otherwise in his response brief. Therefore, all claims against MCSO are dismissed.

**B. Claims against the County**

Defendants argue that the County bears no legal responsibility for the law enforcement actions of the Sheriff or his deputies and consequently all claims against it, both federal and state, must be dismissed. In *Fridena v. Maricopa County*,[19] the Arizona Court of Appeals held that the County was not liable for the county sheriff's

---

[14]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d at 1216.

[15]*See Schwartz v. Superior Court*, 925 P.2d 1068, 1070 (Ariz. Ct. App. 1996).

[16]*See Kimball v. Shofstall*, 494 P.2d 1357, 1359 (Ariz. Ct. App. 1972) (holding that the State Board of Education does not have the power under the state constitution or state statutes to sue or be sued).

[17]*Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010).

[18]*Id.*

[19]504 P.2d 58 (Ariz. Ct. App. 1972).

actions under the doctrine of respondeat superior because the conduct at issue, involving the service of a writ of restitution, is the sheriff's statutory duty.[20] Likewise, the legislature has imposed statutory duties on the sheriff that require him to "[p]reserve the peace" and "[a]rrest . . . all persons who attempt to commit or who have committed a public offense."[21] The sheriff's deputies are employees of the sheriff who are hired by the sheriff.[22] Here, the actions of the deputies were committed in furtherance of the sheriff's exercise of his statutory duties to preserve the peace and make arrests. Thus, because the County has no control of Sheriff Arpaio or his deputies in the execution of these statutory duties, based on *Fridena*, the County cannot be liable for their actions under the doctrine of respondeat superior.

*Houndshell v. White*,[23] bolsters the court's conclusion that the County is not responsible for the actions of Sheriff Arpaio's employees in this case. In *Houndshell*, the Court of Appeals held that county governments in Arizona do not have the legal power to hire, terminate, or discipline the sheriff's employees; only the sheriff possess such power. Given that this case involves misconduct of Sheriff Arpaio's employees and given that the County does not have any legal power to hire, terminate, or discipline those employees, the County is not vicariously liable for the torts of the deputies and should be dismissed.

Plaintiff relies on *Flanders v. Maricopa County*,[24] to argue that the County is ultimately responsible for the conduct of the sheriff's employees in this case. *Flanders*, however, is distinguishable. First, *Flanders* held that the County is responsible for the sheriff's operation of county jails; it did not hold that the County has any authority over

---

[20] *Id.* at 61-62.

[21] A.R.S. § 11-441(A).

[22] A.R.S. § 11-409.

[23] 202 P.3d 466 (Ariz. Ct. App. 2008).

[24] 54 P.3d 837 (Ariz. Ct. App. 2002).

the sheriff's employees in executing their statutory peace keeping duties.  Second, *Flanders* directly involved the *policies* promulgated by the Sheriff in furtherance of his duty to oversee the jails.  Here, it is the specific actions taken by the deputy sheriffs on one occasion that are at issue, not a widespread practice or policy.  While Plaintiff generally asserts that Sheriff Arpaio and the County endorsed or acquiesced to a policy, custom, or practice of assault and malicious behavior on the part of deputies, he provides no factual allegations in support of his bare assertion that the conduct at issue in this case is widespread or reflects a pattern.  Thus, the County cannot be held vicariously liable for the deputies' actions here, and all claims against it must be dismissed.

**C. Sheriff Arpaio's liability under § 1983**

Defendants argue that Sheriff Arpaio cannot be held liable under § 1983 on a theory of respondeat superior.  Indeed, it is settled law that in § 1983 actions liability cannot be imposed on a government entity on the basis of respondeat superior.[25]  Thus, a government entity is not necessarily liable even if one of its employees committed a constitutional tort.  A government entity can, however, be directly liable under § 1983 if it is alleged to have caused a constitutional tort through one of its policies or customs.[26]  "A policy can be one of action or inaction."[27]  To impose liability against a government entity for a failure to act, a plaintiff must show that its policies or customs amount to deliberate indifference and that these policies or customs were the "moving force" behind the constitutional torts.[28]

---

[25] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[26] *Id.* at 694; *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166 (1993) ("In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury.").

[27] *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

[28] *Id.* at 1186.

Here, Plaintiff generally alleges that Sheriff Arpaio had policies or customs that led to the deputies' actions. He alleges that Sheriff Arpaio sanctioned the use of excessive force, ignored the need for training, and failed to adequately supervise, test, or discipline his employees. Plaintiff, however, does not provide enough factual content to support an inference that Sheriff Arpaio endorsed a policy or custom of excessive force. While a custom does not have to be formally approved to be the basis for liability, Plaintiff has not alleged facts which could show that there is a widespread pattern of similar conduct by deputies or facts which suggest that there is a policy or custom of deliberate indifference to such conduct.[29] Indeed, a single use of excessive force does not warrant an inference that the incident was attributable to a policy of deliberate indifference.[30] Therefore, Plaintiff's § 1983 claims against Sheriff Arpaio are inadequately pled and must be dismissed.

**D. Inadequate notice as to Carpenter and Burghart**

Under A.R.S. § 12-821.01(A), lawsuits for injuries against public employees or entities are barred unless those who are sued are individually served with notices of the claims against them.[31] Plaintiff failed to provide Carpenter and Burghart with a notice setting forth the claims against them. State notice of claim statutes, however, do not apply to § 1983 actions;[32] therefore, only Plaintiff's state law claims against Carpenter and Burghart need to be dismissed.

---

[29] *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.").

[30] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985).

[31] *See also Crum v. Superior Court*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996) ("A claimant who asserts that a public employee's conduct giving rise to a claim for damages was committed within the course and scope of employment must give notice of the claim to *both* the employee individually and to his employer.").

[32] *Felder v. Casey*, 487 U.S. 131, 140-41 (1988).

Plaintiff asserts that his claims are brought against Carpenter and Burghart in their individual capacities as well and that his state law claims against them survive to the extent they allege Carpenter and Burghart acted outside their scope of employment. Indeed, the complaint alleges in the alternative that Carpenter and Burghart were acting in their individual capacities when they assisted Pellino on the night of the assault.[33] Thus, Plaintiff's state law claims against the two deputies survive, but only to the extent he alleges they were acting as individuals and not in their official capacities.[34]

**E. Section 1983 claims**

Defendants assert that Plaintiff's § 1983 claims must fail because he has failed to properly allege a constitutional tort or plead plausible factual allegations, and because the individual defendants have qualified immunity. To state a claim under § 1983, a plaintiff must allege a violation of a constitutional or statutory right and allege that the violation was committed by a person acting under the color of state law.[35]

In Count One, Plaintiff clearly alleges that Defendants violated his Fourth Amendment rights by using excessive force and that the deputies involved were acting under the color of state law.[36] Plaintiff's complaint sets forth sufficient facts to support his Fourth Amendment excessive force claim. In addition to facts related to his arrest and beating, he alleges that he did not verbally or physically threaten the deputies and did not make any violent movements toward the deputies or resist arrest. Thus, the facts as alleged show that the deputies did not have a reasonable belief that any

---

[33] Doc. 1-1 at ¶¶ 4-5.

[34] *See Crum*, 922 P.2d at 317-18 (holding that plaintiff was not required to comply with the notice requirement in A.R.S. § 12-821.01 when suing a public employee in his individual capacity).

[35] *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

[36] *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (recognizing that the Fourth Amendment's prohibition against unreasonable seizures bars excessive force against citizens).

person was in danger of imminent harm from Plaintiff. He also alleges that he suffered extensive injuries as a result of the incident.

Defendants argue that the deputies have qualified immunity. Indeed, government officials are immune from civil liability under § 1983 when performing discretionary duties so long as "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[37] However, it is clearly established that the use of excessive force by law enforcement officers violates the Fourth Amendment.[38] To determine the reasonableness of the force used, courts look to factors such as the officers' safety, the motivation for the arrest, and the extent of the injury caused.[39] Plaintiff has alleged sufficient facts to support an excessive force claim.

Count Three, while certainly turgid and difficult to follow, nonetheless sets forth an Equal Protection claim with sufficient clarity. To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff can allege facts showing that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment.[40] Here, Plaintiff alleges that he was treated as a "class of one" in that he was treated differently than other citizens present at the scene of an accident. He alleges that the deputies' treatment of him was motivated by the fact that he was present at the scene as an attorney and not on any rational law enforcement purpose. Count Three is therefore adequate.

---

[37]*Maxwell v. County of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

[38]*Chew v. Gates*, 27 F.3d 1432, 1457-58 (9th Cir. 1994) (citing *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)).

[39]*Id.*

[40]*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds as stated in Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007).

## V.  CONCLUSION

Based on the preceding discussion Defendants' Motion to Dismiss at Docket 14 is GRANTED IN PART AND DENIED IN PART as follows:

**Counts Two, Five, and Eight**, which are brought only against MCSO and the County, are dismissed;

**Count One** is dismissed as to MCSO and the County but survives as to Pellino, Burghart, and Carpenter;

**Count Three** is dismissed as to MCSO, County, and Sheriff Arpaio but survives as to Pellino, Burghart, and Carpenter;

**Count Four** is dismissed as to MCSO, the County, and Burghart and Carpenter in their official capacities, but it survives as to Burghart and Carpenter in their individual capacities and Pellino, in both his official and individual capacity.

**Count Six** is dismissed as to MCSO and the County but survives as to Pellino;

**Count Seven** is dismissed as to MCSO and the County but survives as to Pellino;

**Count Nine** is dismissed as to MCSO, the County, and Burghart and Carpenter in their official capacities, but it survives as to Burghart and Carpenter in their individual capacities, Pellino, in both his official and individual capacities, and Sheriff Arpaio.

DATED this 28th day of January 2014.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE