1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF ARIZONA**

8
9
10

**Daniel L. Kloberdanz,**            )
11                                    )
                    **Plaintiff,**    )        **2:13-cv-2182 JWS**
12                                    )
13          **vs.**                   )        **ORDER AND OPINION**
                                      )
14   **Joseph M. Arpaio, *et al.*,**  )        **[Re: Dockets 121 and 122]**
                                      )
15                                    )
                    **Defendants.**   )
16   _____ )
17
18

**I.  MOTIONS PRESENTED**

19          At docket 121 plaintiff Daniel L. Kloberdanz ("Kloberdanz") moves for an order

20   precluding defendants from introducing evidence of his relationship with Ronda

21   McCulloch.  Defendants respond at docket 126.  No reply was filed.  At docket 122

22   Kloberdanz moves for an order foreclosing introduction of evidence that as a lawyer he

23   was obligated to make a report regarding his condition to the State Bar of Arizona.

24   Defendants respond at docket 127.  No reply was filed.  Oral argument was not

25   requested on either motion, and oral argument would not assist the court.

26
27
28

## II.  BACKGROUND

Kloberdanz is an attorney who is a member of the State Bar of Arizona ("bar association").  He has practiced law in the firm of Berens, Kozub, Kloberdanz & Blonstein, PLC.  An employee of that law firm, Valerie Lingenfelder ("Lingenfelder"), was involved in a traffic accident on the evening of June 15, 2012, in Cave Creek, Arizona.  She called Kloberdanz and asked him for assistance at the accident scene. Kloberdanz reached the scene before anyone from the Maricopa County Sheriff's Office ("MCSO") arrived.

According to Kloberdanz's complaint, the following acts and events transpired that evening:  After MCSO personnel arrived, Kloberdanz told a posseman who accompanied the responding deputy sheriffs that he was Lingenfelder's attorney, but had not witnessed the accident.  Deputy Sheriff Pellino then approached Lingenfelder and moved her away from Kloberdanz.  He asked Lingenfelder a few questions and performed an eye test on her.  He then placed her under arrest and handcuffed her. After Kloberdanz asked if he could stand near Lingenfelder to calm her and she had confirmed that Kloberdanz was her attorney, Pellino shoved Kloberdanz hard on his chest, knocking him down and causing Kloberdanz to hit his head on the ground. Kloberdanz stood up, and Pellino yelled at him about lawyers telling him how to do his job.  He then tackled Kloberdanz and told him he was under arrest, all the while yelling anti-lawyer comments.  Kloberdanz did not resist or provoke Pellino.  Two other officers on the scene, Deputy Sheriff Carpenter and Posseman Burghart, assisted Pellino. They grabbed Kloberdanz, handcuffed him, and held him down while Pellino drove Kloberdanz's head into the gravel.  The officers finally pulled Kloberdanz off the ground, but with such force that they dislocated his shoulder.  Kloberdanz was driven to a police substation and placed in a cell.  Later that night Kloberdanz was transferred to the downtown Phoenix police station, but not released until the next day.  Kloberdanz

-2-

1
2
suffered multiple physical injuries from the assault and continues to suffer a variety of injuries and losses resulting from defendants' conduct.

3
4
5
6
As noted above, the preceding description of events and circumstances is based on allegations in Kloberdanz's complaint.  Defendants deny Kloberdanz's account of what happened and the ensuing consequences.  It is their position that defendants did nothing wrong in their contact with and handling of Kloberdanz.

### III.  DISCUSSION

7
8
**A.  Motion at Docket 121**

9
10
11
12
13
Kloberdanz asks the court to foreclose evidence of his sexual and other relationships with Ronda McCulloch while she was employed at his law firm.  He argues that the evidence would be offered to support the conjecture that he had a similar relationship with Lingenfelder.  Defendants do not assert an unfettered right to introduce evidence of Kloberdanz's relationship with McCulloch.  Rather, their position is succinctly put in their briefing as follows:

14
15
16
17
18
> One issue that was raised in this matter is the relationship between Mr. Kloberdanz and Valerie Lingenfelder.  It is believed that Mr. Kloberdanz will testify that he did not have an intimate relationship with Ms. Lingenfelder.  However, should he open the door during his testimony that he would never have any such relationship, questions about his relationship with Ms. McCulloch would be relevant and appropriate as it would go to the truthfulness of his testimony and would impeach his testimony.[1]

19
20
21
22
23
24
The court agrees with Kloberdanz that testimony about his relationship with McCulloch is appropriately excluded under both Fed. R. Evid. 403 and 404(b)(1) in the abstract.  That said, the court also agrees with defendants that if Kloberdanz were to testify at trial that he would not have an intimate relationship with an employee, then defendants would be entitled to challenge his credibility with evidence of his relationship with McCulloch.

25
26
27
[1]Doc. 126 at p. 2.

28

1

**B.  Motion at Docket 122**

2

    One of Kloberdanz's assertions, with respect to the injuries allegedly caused by

3

defendant, is that the injuries impaired his ability to practice law.  Obviously, evidence

4

which tends to show that he was or was not so impaired is relevant.  Although the

5

parties do not make the point clearly, the court concludes that the impairment in dispute

6

is a cognitive impairment, not a physical impairment.  Against this background,

7

Kloberdanz asks the court to exclude any evidence that he did not report his impaired

8

condition to the bar association.  His argument is that under Arizona law he had no

9

obligation to do so, although he concedes that in some circumstances other lawyers

10

would have an obligation to do so.  Kloberdanz goes on to urge that even if applicable

11

ethics rules might have required him to take some steps to make known his impairment,

12

the probative value of such evidence would be "substantially outweighed by the danger

13

of unfair prejudice, confusing the issues, misleading the jury, and wasting time."[2]   This

second argument is obviously premised on Fed. R. Evid. 403.

14

    Defendants do not argue that Kloberdanz had an obligation to report himself to

15

the bar association, but point out that nothing would have prevented him from doing so.

16

They also point out that, as Kloberdanz vaguely conceded and as the court now finds,

17

other lawyers in his firm had a duty to report Kloberdanz's cognitive impairment had

18

they detected it.   Defendants also suggest that the impairment should have been

19

reported to the law firm's E&O carrier.  Finally, they contend correctly that if Kloberdanz

20

were impaired, he had a duty to decline legal work for clients, thus making evidence

21

that he did not do so admissible.

22

    With respect to whether Kloberdanz reported a cognitive impairment to the bar

23

association, Kloberdanz has the better of the argument.  It might have been a good

24

thing to do, but the parties do not cite–and the court has not found–any law, rule or

25

regulation that would require self-reporting.  Moreover, it would confuse the issues if the

26

———————————————

27

    [2]Doc. 122 at p. 2.

28

evidence that he did not report were admitted and then that evidence were made the subject of a jury instruction saying both that Kloberdanz had no duty to do so, but that he could have done so.

Evidence that other lawyers who observed Kloberdanz's work did not report an impairment to the bar association is relevant.  Morever, its probative value is not substantially outweighed by any of the Rule 403 considerations.  The same cannot be said of reports to the firm's E&O carrier, for that opens an area regarding provisions of the insurance policy which would confuse the jury and waste time.  Finally, evidence that Kloberdanz did not decline work for existing clients or refrain from taking new ones during a period of cognitive impairment is relevant and does not run afoul of Rule 403.

## IV.  CONCLUSION

Based on the preceding discussion:

(1) the motion at docket 121 is **GRANTED, provided** that if Kloberdanz offers testimony that he would not have an intimate relationship with any law firm employee, defendants may introduce evidence of his relationship with McCulloch; and

(2) the motion at docket 122 is **GRANTED in part and DENIED in part** as follows: defendants may not introduce evidence that Kloberdanz did not himself report that he had any cognitive impairment to the bar association and may not introduce evidence that the E&O carrier for Kloberdanz's law firm was not notified of Kloberdanz's cognitive impairment, but defendants may introduce evidence that other lawyers who observed Kloberdanz's work did not notify the bar association that he had a cognitive impairment, and they may also introduce evidence that Kloberdanz did not decline to perform legal work during any period of claimed impairment.

DATED this 24th day of May 2016.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

-5-