UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Daniel L. Kloberdanz, | ) | 2:13-cv-2182 JWS |
| | ) | |
| Plaintiff, | ) | ORDER FROM CHAMBERS |
| | ) | |
| vs. | ) | (Motion at Docket 221) |
| | ) | |
| Joseph K. Pellino, | ) | |
| | ) | |
| Defendant. | ) | |

## I. MOTION PRESENTED

At docket 221, Defendant Joseph Pellino ("Pellino") filed a motion asking the court to reconsider its order at docket 220, which denied his motion *in limine* at docket 218. Plaintiff Daniel Kloberdanz ("Kloberdanz" or "Plaintiff") responded to the motion for reconsideration as directed at docket 224. Oral argument was requested, but would not be of assistance to the court.

## II. BACKGROUND

Kloberdanz filed suit in state court against numerous defendants seeking to recover damages arising from events which transpired on June 15, 2012. Early in the litigation, Kloberdanz agreed to the dismissal of his claims against the Maricopa County Board of Supervisors, the five individual Supervisors, and the Maricopa County Attorney. In an order at docket 20, the court granted defense requests to dismiss Kloberdanz's claims against defendants Arpaio, the Maricopa County Sheriff's office and Maricopa County. The remaining claims were those pled against Defendants Burghart, Carpenter, and Pellino. Later, the parties stipulated to dismiss Count Three in its entirety as to all defendants and Count Seven, which was directed only at Pellino.[1] The remaining claims were the subject of a seven-day jury trial in August of 2016.

During trial, the court granted a directed verdict in favor of Pellino as to the Malicious Prosecution claim. The jury later returned verdicts in favor of Burghart and Carpenter on Kloberdanz's Fourth Amendment Excessive Force claim, his only claim against them. The jury also returned a verdict in favor of Pellino on Kloberdanz's false arrest claim, but could not agree on verdicts on Kloberdanz's other claims against Pellino. A mistrial was declared as to those claims. They will be litigated in a second trial scheduled for February 6, 2017.

Pellino filed a motion *in limine* at docket 218. In that motion, Pellino asked that the court "issue an order precluding the presentation of any evidence of claim for damages regarding Plaintiff's allegations that, after he was pushed by Pellino and then

---

[1] Doc. 110. The court approved the parties' stipulation at docket 112.

taken to the ground to be arrested, Pellino then pounded/slammed Plaintiff's head into the ground three times, before he was stood up in handcuffs, and also that he was kicked and punched during that same time."[2] Plaintiff filed a response in opposition at docket 219. The court filed a text order denying the motion, indicating that it found Plaintiff's position to be correct.[3] Pellino then filed his motion for reconsideration, arguing that Plaintiff's response did not adequately address his arguments nor provide any credible rebuttal for the court to rely upon. The court directed Kloberdanz to respond.

### III. STANDARD OF REVIEW

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case.[4] However, as long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[5] That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."[6] Local Rule of Civil

---

[2] Doc. 218 at p. 1.

[3] Doc. 220.

[4] *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

[5] *City of Los Angeles v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

[6] *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Procedure 7.2(g)(1) recites essentially the same rule, requiring a showing of "manifest error."[7]

## IV. DISCUSSION

Pellino's motion *in limine* is essentially asking the court to find that collateral estoppel prevents Kloberdanz from retrying the issue of whether any head slamming, kicking, and punching took place during his arrest. Collateral estoppel, or issue preclusion, "prohibits relitigation of issues that have been adjudicated in a prior action."[8] It applies when the following requirements have been met: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the final judgment."[9] "The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated."[10]

The requirement that an issue be actually litigated and determined does not mean that there had to be a specific finding or opinion on the matter.[11] Necessary

---

[7] LRCiv 7.2(g)(1) ("The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence.").

[8] *In re Child*, 486 B.R. 168, 172 (B.A.P. 9th Cir. 2013).

[9] *In re Giangrasso*, 145 B.R. 319, 322 (B.A.P. 9th Cir. 1992).

[10] *In re Child*, 486 B.R. at 172.

[11] 50 C.J.S. *Judgments* § 1076.

inferences from the entire record—the judgment, pleading, evidence, and jury instructions—will be given preclusive effect as well.[12]

Here, Pellino asks this court to consider what the jury necessarily determined about Pellino's conduct based on its verdict in favor of Burghart on the Excessive Force claim. In that claim, which was brought against all three officers, Kloberdanz alleges that Pellino pushed him down to the ground and that when he stood back up Pellino knocked him back down to the ground. He alleges that while he was on the ground being handcuffed, Pellino pushed and pounded his head into the ground multiple times and some combination officers kicked and punched him. Burghart and Carpenter are not alleged to have been involved in the push and take down of Kloberdanz, but they are alleged to have participated in the alleged excessive force that occurred after the second take down—the head pounding, kicking, and punching.

The court's instruction on Excessive Court included the following paragraph:

> . . . Kloberdanz must show that the defendant personally participated in actions which allegedly deprived Kloberdanz of his particular rights under the United States Constitution. Personal participation does not require that the officer's actions themselves rise to the level of a constitutional violation but rather only that the officer was an active participant in the constitutional deprivation rather than a mere bystander.[13]

---

[12]*Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994) ("Necessary inferences drawn from the judgment, pleadings, and evidence will be given preclusive effect . . . ."); 50 C.J.S. *Judgments* § 1076 (noting that the court must look to jury instructions as well); *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1145 (9th Cir. 2009) (finding that the jury instructions underlying the finding left doubt as to what the jury decided).

[13]Doc. 192 at p. 12.

The undisputed evidence showed that Burghart was at least assisting with the handcuffing and arrest of Kloberdanz at the time of the alleged excessive force.[14] Burghart testified that he had control of Kloberdanz's right arm to secure handcuffs when Kloberdanz was on the ground the second time and that he assisted in lifting Kloberdanz back up to his feet, which is the time during which Kloberdanz alleges Pellino pushed and slammed his head multiple times and the officers kicked and punched him.

Pellino asserts that, because Burghart was undisputedly hands-on during the arrest and because the jury was instructed to find excessive force in the event a defendant actively participated in the unconstitutional conduct, the jury members could not have rationally found for Burghart as to the Excessive Force claim if they thought Pellino had done any of the alleged beating while Kloberdanz was on the ground. In other words, given that the jury found for Burghart on the excessive force claim, Pellino argues that there is only one rational inference to be drawn from this case record: the jury determined that the head slamming and beating did not happen.

Pellino's rationale is appealing. Indeed, there is some case law suggesting that Burghart's actions would make him liable. In *Blankenhorn v. City of Orange*,[15] the Ninth Circuit explained in a footnote that liability for excessive force is predicated on the officer's "integral participation." Integral participation does not require that the officer's

---

[14]The facts were contradictory about where Carpenter was during the handcuffing and beating, and therefore the court cannot make any inferences about what the jury necessarily found about the alleged beating based on their verdict in favor of Carpenter on the Excessive Force Claim.

[15]485 F.3d 463 (9th Cir. 2007).

actions themselves be unconstitutional, but that the officer had a "fundamental" role in the conduct.[16] The court in *Blankenhorn* concluded that where excessive force was alleged, in part based on the use of hobble restraints on the plaintiff's wrists and ankles, an officer's assistance in handcuffing the plaintiff before the other officer applied the hobble restraints was instrumental to the efforts to restrain the plaintiff in an allegedly excessive manner.[17] On the other hand, there are district court cases which have held that assistance in handcuffing does not amount to "integral participation." For example, in *Mendez v. Montour*,[18] the district court held that an officer who was holding the plaintiff during his arrest did not actively participate in the excessive force used by his partner, who had suddenly performed a take down of the plaintiff and then later slammed the plaintiff's head against the patrol car.[19]

As the case law shows, what constitutes active participation is highly fact dependent. The court's instruction was not that nuanced: it did not provide the jury with specific guidance on what situations have and have not been considered "active participation." The instruction explained that participation does not require each officer's actions themselves rise to the level of a constitutional violation, but it did not otherwise try to define or explain what active participation would mean besides that it does not include "mere bystander[s]." The court did not instruct the jury that any hands-on participation is per se "active participation," nor does the case law necessarily

---

[16]*Id.* at 481 n. 12.

[17]*Id.*

[18]No. 12-cv-04170, 2014 WL 1218665 (N.D. Cal. Mar. 21, 2014).

[19]*Id.* at *4.

support such an instruction.  Therefore, the jury could have found that while Burghart was a participant in the arrest, which they deemed lawful, he was not a participant in Pellino's actions.

Pellino cites a Tenth Circuit case, *Estate of Booker v. Gomez*,[20] to argue that active participation includes failing to intervene when another officer uses excessive force.  Again, however, the court's instruction to the jury was not that specific.  It did not tell the jury that complicity is tantamount to participation.

While all jury members necessarily found that Burghart was not actively lifting and dropping Kloberdanz or kicking and hitting him, the court concludes, based on its instruction, that some members of the jury could have potentially found that Pellino must have engaged in some level of force—pressure to the head, pounding of the head to some extent, or kicking and hitting—given Kloberdanz's injuries.  It is also possible that, as Pellino suggests, the jury unanimously agreed that Pellino did not engage in the alleged head slamming, but that some members thought the claim against Pellino for excessive force was still valid based on Pellino's pushing of Kloberdanz.  However, the court cannot speculate on which is the most likely scenario.  There is simply no way to know what specific testimony jury members believed and what they did not.

While it is a close call, the court cannot conclude that collateral estoppel on the issue of Pellino's actions is warranted here.  "Where doubt exists as to the basis for the jury's finding, collateral estoppel does not apply."[21]

---

[20] 745 F.3d 405 (10th Cir. 2014).

[21] *Taco Bell*, 552 F.3d at 1145.

## V.  CONCLUSION

For the reasons above, the court denies the motion at docket 221 and maintains its denial of Pellino's motion *in limine*.

DATED this 1st day of January 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT